**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

GREGORY D. LINZY                                                                                          PLAINTIFF

v.                                                                        CIVIL ACTION NO.1:10-CV-277-SA-DAS

SARA LEE CORPORATION                                                                              DEFENDANT

## MEMORANDUM OPINION

Presently before the Court is Motion for Summary Judgment [38] filed by Defendant, Sara Lee Corporation. After reviewing the motion, responses, rules, and authorities, the Court finds as follows:

## FACTUAL BACKGROUND

Gregory Linzy ("Plaintiff" or "Linzy") commenced his employment with Sara Lee Corporation ("Defendant" or "Sara Lee") in January of 2009. Linzy worked in the sanitation department and was referred through Kelley Temp Services. Sara Lee hired Linzy as a full-time employee in the sanitation department on or about June 30, 2009, and his job functions consisted of cleaning machines, parts, and floors in the production area of the plant. Linzy worked the 11:00 p.m. until 7:00 a.m. shift, and his supervisors at all relevant times were R.L Wells and Bennie Williams.

The incident fueling this action brought under the Family and Medical Leave Act ("FMLA") occurred on July 22, 2010. As part of his work within the sanitation department, Linzy was assigned to clean a machine called a "batch blender," which is a "grinder-type machine" that has a "spiral screw conveyor." Linzy was cleaning this machine on July 22

and, while he was rinsing the machine with a water hose, he endeavored to pull a piece of meat out of the drain hole under the bottom of the machine. The machine's blade appears to have caught the top of Linzy's finger and, according to Linzy, this caused his finger on his right hand to be severed above the first phalange.

After enduring the injury to his finger, Linzy initially headed directly towards the supervisor's office. However, Linzy asserts that upon noticing the severity of his injury, as he avows that his finger was "twisted all the way around," he "freaked out" and "immediately . . . left the plant and went to the emergency room." Linzy drove himself to North Mississippi Medical Center and, on the way, he called his girlfriend, Roshondra Mitchell, who met him at the hospital. It is undisputed that, shortly thereafter, Roshondra Mitchell placed a phone call to Sara Lee—more specifically, Linzy's supervisors at Sara Lee—advising both that Linzy was in the hospital and the reason he was there. It appears that after Sara Lee was notified, Travis Fisher, apparently on behalf of Sara Lee, went to the hospital to "f[ind] out what was going on" with Linzy's injury. Linzy remained in the hospital until around 9:00 a.m. or 10:00 a.m. that morning, when he was then released. As a result of the injury, Linzy's middle finger on his right hand was amputated down to the first phalange.

According to Defendant, after Linzy's accident occurred, an investigation ensued, conducted by the Human Resources Manager, Stan Brewer. Defendant alleges that it was "learned" during the investigation that Linzy had received training on and failed to follow a

2

particular safety protocol in place at Sara Lee termed the "lock-out, tag-out" procedure.[1]  On July 29, 2010, Linzy received a telephone call from Brewer.  Linzy asserts that Brewer informed him that an investigation had occurred and he would be terminated for leaving the plant without notifying his supervisors.  While disputed by Brewer, Linzy contends that Brewer never advised him that he was being terminated for failing to follow the "lock-out, tag-out" procedure.

After his termination, Linzy filed the instant action on November 10, 2010, alleging that his "termination violated the Family and Medical Leave Act, since it was in retaliation for his being hurt and getting necessary medical treatment."  Defendant subsequently filed a Motion for Summary Judgment [38], arguing it is entitled to judgment as a matter of law on all of Linzy's claims. After mining through the summary-judgment record, the Court entered an Order [46], invoking Federal Rule of Civil Procedure 56(e)(1)[2] and allowing Plaintiff an opportunity to address a factual argument that was, at that point, not properly addressed and supported.  More specifically, in Defendant's motion for summary judgment, it argued that Plaintiff failed to demonstrate he suffered from a "serious health condition" as defined in the

---

[1] Linzy maintains that he cleaned the "batch blender" the same way each day, and he was expressly instructed by his supervisors not to perform the "lock-out, tag-out" procedure while cleaning the "batch blender."  This issue is discussed in more detail *infra*.

[2] Rule 56(e) states as follows:

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

FED. R. CIV. P. 56(e)(1).

FMLA.  In Linzy's originally-filed rebuttal memorandum, he troublesomely neglected to appropriately address the factual arguments posited by Defendant vis-à-vis this issue.  Given the specific record in this action and the arguments set forth by Defendant, the Court concluded Rule 56(e)(1) was apposite; therefore, Plaintiff was provided ten (10) days to address Defendant's argument that Plaintiff failed to establish he suffered from a "serious health condition." Defendant thereafter was given five (5) days to reply.  All briefs have now been submitted, and this issue is ripe for judicial review.

## LEGAL STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.[3] The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548.  The nonmoving party must then "go beyond the pleadings" and "designate

---

[3] The Court feels compelled to point out to the parties that effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in **Rule 56(a)**, not 56(c).  Rule 56(a) now states that a court "shall grant summary judgment if the movant shows that there is no genuine **dispute** as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphasis added).

4

'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## ANALYSIS AND DISCUSSION

The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" for exercising FMLA-protected rights. Id. § 2615(a)(2). Thus, the FMLA contains two distinct provisions: prescriptive and proscriptive. The prescriptive provision is a substantive provision that "creates a series of entitlements or substantive rights." Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 580

(5th Cir. 2006). In contrast, the proscriptive provision "protects employees from retaliation or discrimination for exercising their rights under the FMLA." Id.[4]

At the outset, the Court notes that Linzy has only alleged in his complaint a violation under the FMLA's proscriptive provision. That is, Linzy's complaint alleges, "Plaintiff's termination violated the [FMLA], **since it was in retaliation** for his being hurt and getting necessary medical treatment."[5] Linzy does not mention nor otherwise set forth in his complaint allegations that Sara Lee "interfered" with his substantive rights under the FMLA. While Linzy attempts to generate an FMLA interference claim through his memorandum in response to the summary judgment, the Fifth Circuit has found that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Sup'rs of LSU, 429 F.3d 108, 113 (5th Cir. 2005); see also Saucedo-Falls Kunkle, 299 F. App'x 315, 318 n.3 (5th Cir. 2008) (finding that plaintiff did not raise a retaliation claim in her complaint; thus, the retaliation claim was deemed waived); Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990). (claim raised in response to summary judgment but not in amended complaint was not properly before the court).[6] Given this, the Court cabins its analysis to Linzy's allegations of proscribed retaliation under the FMLA.

---

[4] "There is no significant difference between [a retaliation claim] under the FMLA and similar claims under other anti-discrimination laws." Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001) (citation omitted), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

[5] Emphasis added by the Court.

[6] Despite the line of cases stemming from the Fifth Circuit treating an argument raised in response to summary judgment—but not the complaint—as waived or otherwise not

A. Prima Facie Case

To survive summary judgment on an FMLA retaliation claim, Linzy must establish a prima facie case by showing: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the discharge. See, e.g., Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). There is no dispute that Linzy endured an adverse employment action (*i.e.*, termination from his employment). For this reason, the Court only undertakes an examination of the first and third prongs of his prima facie case.

---

properly before the court, the Fifth Circuit has also opined that "when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." Riley v. School Bd. Union Parish, 379 F. App'x 335, 341 (5th Cir. 2010); see also Ganther v. Ingle, 75 F.3d 207, 211-12 (5th Cir. 1996). Given this seeming inconsistency in Fifth Circuit precedent, the Court also analyzes Linzy's arguments concerning FMLA interference as a motion for leave to file an amended complaint.

    Because a responsive pleading has already been filed in this case, Plaintiff may only amend his complaint "by leave of court or by written consent of the adverse party." FED. R. CIV. P. 15(a). This leave "shall be freely given [by the Court] when justice so requires." Id. However, the decision to permit or deny amendment is within the court's discretion and "is reversible only for abuse of that discretion." Overseas Inns S.A.P.A. v. United States, 911 F.2d 1146, 1150 (5th Cir. 1990). In the exercise of its discretion, the Court may consider several factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice by virtue of amendment, and futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). In a case such as this, in which an opposing party has filed a motion for summary judgment, the Court will "carefully scrutinize a party's attempt to raise new theories of recovery by amendment." Parish v. Frazier, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam). In this case, the Court concludes that it would unduly prejudice the Defendant to allow Linzy to amend his complaint. See Overseas Inns, 911 F.2d at 1151.

7

*Protected Under the FMLA*

*(i)   Qualifying Condition*

Defendant begins by arguing that Linzy cannot demonstrate that he was protected under the FMLA. To satisfy this requirement, Linzy must demonstrate that (a) he is suffering from a qualifying condition, and (b) he provided his employer with adequate notice of his intention to take FMLA leave. An employee is entitled to FMLA leave for *inter alia* a "serious health condition that makes the employee unable to perform the functions of the position of such employee."[7] 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is further defined as an "illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 **or** continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113 (emphasis added). Linzy never appears to contend he received inpatient care; instead, he relies on the "continuing treatment" alternative. The regulations on this issue delineate, in pertinent part, as follows:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, **that also involves**:
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity . . . by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; **or**

---

[7] It is undisputed that Linzy was employed with Sara Lee for more than twelve months and worked 1,250 or more hours in the twelve-month period. See 29 U.S.C. § 2611(2)(A). It is also not disputed that Sara Lee Corporation employed fifty or more employees at the facility where Linzy worked. See 29 U.S.C. § 2611(2)(B)(ii).

8

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115.

As indicated *supra*, the Court employed Federal Rule of Civil Procedure 56(e)(1) and provided Linzy an opportunity to address Defendant's factual arguments that Linzy failed to establish he suffered from a serious health condition. Linzy submitted an adequately-supported response; one that sufficiently negates the appropriateness of summary judgment on this issue. According to Linzy's medical records, his diagnosis was "amputation of distal phalanx, right middle finger." He received "temporary total" Workers' Compensation benefits and was compensated for a "permanent partial" sixty-five percent (65%) loss of his middle finger. He was prescribed Oxycodone for pain and scheduled to return to the reconstructive surgery clinic for a follow-up on August 4, 2010. His *first* return-to-work notice was set for almost four weeks after his injury. Yet, Linzy has also provided medical office notes that indicate this first work notice was a "mistake." A clinic note from Dr. Alan Pritchard specifies as follows:

> The patient comes in for a followup of right middle finger amputation. He brought some papers in today indicating that I made a mistake on him returning to work. His visiting of 8/16/01 I saw him and he was still having pain. The problem was that he was not moving his PIP joint of his middle finger and I sent him to Charles Bouldin, Physical Therapist, who he saw on 8/17/10. There is a release mentioning that he can go back to work on 8/18/10 without restrictions followed by a note later stating he was not released until 9/13/10. Evidently, I am going to say that this was a mistake **because he was not moving that finger adequately enough to go back to work because it could have caused him some potential injury. The true date for him to go back to work without restrictions would have been 9/13/10.**

9

The records further reveal that Linzy received treatment on his finger for over three months, and a doctor's note indicates that "maximum medical improvement" had still not been reached as of October 25, 2010. Given Linzy's injury, as well as the medical records produced,[8] the Court concludes that summary judgment on this issue should be denied.

*(ii)    Adequate Notice*

The second step of the inquiry is determining whether Linzy provided Sara Lee with adequate notice of his intention to take FMLA leave.[9] The FMLA distinguishes between "foreseeable" and "unforeseeable" leave. See 29 C.F.R. §§ 825.301, 825.302, 825.303. The FMLA requires an employee to provide her employer with at least thirty days advance notice if the need for leave is foreseeable. 29 C.F.R. § 825.302. When an absence is not foreseeable, the employee should give notice to the employer "as soon as practicable under the facts and circumstance of the particular case." 29 C.F.R. § 825.303(a). "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b).

---

[8] In Defendant's summary-judgment motion, it indicated that Linzy failed to "produce[ ] medical documentation or proof. . . ." Linzy indicates in his reply to the Court's Rule 56(e) Order that "all of the medical records cited herein by Plaintiff, including the return to work notes, were provided to Defendant as part of Plaintiff's Pre-Discovery Disclosure of Core Information." In Defendant's rebuttal memorandum, it retreats from its original assertion, conceding that "its assertions that 'absolutely no medical evidence exists' was an inadvertent oversight on the part of Defendant's counsel. . . ."

[9] The Court notes that it is unclear as to whether Defendant even moves for summary judgment on the notice issue. Defendant, however, does state, "Linzy admits he left the plant's premises without notifying his supervisors or anyone else." Given these statements, the Court performs an analysis of the adequacy of the notice provided to Sara Lee concerning Linzy's need for FMLA leave.

Linzy's leave was certainly "unforeseeable"; thus, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." See id. (citing Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995)). The timing and content of the notice depends on the facts and circumstances of each individual case. See Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 977 (5th Cir. 1998). Here, while Linzy was in the emergency room, his girlfriend placed a telephone call to Sara Lee informing Linzy's supervisors where he was and advising them of his injury. The regulations expressly note that "[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member, **or other responsible party**) if the employee is unable to do so personally." 29 C.F.R. § 825.303(a) (emphasis added). Sara Lee then sent Travis Fisher to the emergency room to investigate the injury. The Fifth Circuit has proffered that there are no "categorical rules for the content of the notice by an employee." Manuel, 66 F.3d at 764. Rather, the issue of notice is a "fact issue" that normally "should be left to a jury." Satterfield, 135 F.3d at 977 (citations omitted). In light of the record in its entirety, Linzy has raised a genuine dispute of material fact on the adequacy and timeliness of the notice given to Defendant of the need for FMLA leave. Accordingly, summary judgment is denied on Defendant's claim that Linzy cannot demonstrate he is protected under the FMLA.

*Causal Connection*

In order to establish the third prong of a prima facie case of retaliation under the FMLA, "the employee must show . . . he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought

protection under the FMLA." Mauder v. Metropolitan Transit Auth. of Harris Cnty., 446 F.3d 574, 583 (5th Cir. 2006) (citing Hunt v. Rapides Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2001)). "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." Id. (citing Wilson v. Lemington Home for the Aged, 159 F. Supp. 2d 186, 195-96 (W.D. Pa. 2001) (explaining that a causal connection existed between the FMLA leave and the termination when the plaintiff was terminated while on FMLA leave and reasoning that the close proximity in time between FMLA leave and the adverse action establishes the necessary causal connection)). Moreover, "the plaintiff does not have to show that the protected activity is the only cause of her termination." Id. (citing Long v. Eastfield Coll., 88 F.3d 300 n.4 (5th Cir. 1996) (holding that the plaintiff was not required to show that the protected activity was the "sole factor" motivating adverse employment action)). The plaintiff is, however, required to show that the protected activity and the adverse employment action are "not completely unrelated." Id. (citing Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir. 2001)).

Here, Linzy maintains that "seven days after the report of the injury, Linzy was terminated." Linzy was injured on July 22, 2010, and he appears to have received a phone call on July 29, 2010, advising he was going to be terminated. The Court find the close timing minimally sufficient for purposes of the motion at bar to establish a causal link.

B. Legitimate, Non-Retaliatory Reason

After concluding that, for purposes of summary judgment, Linzy has presented a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-

retaliatory reason for the employment action. Here, Defendant maintains that it terminated Linzy because he violated the "lock-out, tag-out" procedure and because he left the plant without notifying management. This articulated reason satisfies Defendant's burden.

C. Pretext / Mixed Motives

In order to survive summary judgment, Linzy must offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative).[10] The Court finds that Linzy has met his burden at the summary-judgment stage of demonstrating pretext.

---

[10] Defendant declares that the mixed-motives alternative does not apply under the FMLA post- the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In Gross, the Supreme Court announced that, in stark contrast to Title VII, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, does not permit mixed-motives claims. Id. at 2352. Instead, according to Gross, a plaintiff must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id. Because the Court concludes that Linzy has satisfactorily demonstrated pretext, the Court need not—*at this time*—decide whether Linzy may utilize the mixed-motives framework in order to prove his FMLA action. See Smith v. Xerox Corp., 602 F.3d 320, 333 (5th Cir. 2010). To the extent the issue is raised at trial, the Court will, in accordance with Smith, "decide whether . . . [the] case involves mixed motives," id., and whether such a framework may be utilized under the FMLA.

However, the Court does note that the Fifth Circuit, while previously extending the mixed-motive framework to FMLA cases, has not expressly addressed the issue in light of the Gross decision. See Wilson v. Noble Drilling Servs., Inc., 405 F. App'x 909, 912 n.1 (5th Cir. 2010). Yet, some district courts within the Fifth Circuit have continued to allow mixed motives under the FMLA. See, e.g., Harville v. Texas A&M Univ., 2011 WL 2295279, at *8 (S.D. Tex. June 8, 2011). Moreover, the Sixth Circuit has indeed directly addressed the issue in Hunter v. Valley View Local Schools, 579 F.3d 688 (6th Cir. 2009). In that case, the court cited to Gross and stated that "[r]ecently, . . . the Supreme Court reminded us that its Title VII decisions do not automatically control the construction of other employment discrimination statutes." Id. at 691. Given this direction from the Supreme Court, the Sixth

First, Linzy maintains that when Brewer informed him he would be terminated, Brewer *only* asserted that the reason was because he left the plant without notifying management. That is, Linzy avers Brewer never mentioned that one of the reasons driving his termination was because he failed to follow the alleged appropriate protocol. However, Brewer testified that Linzy's leaving the plant was only the "minor" reason that he was terminated, and that the "more significant [reason]" was the failure to follow the "lock-out, tag-out" procedure. If Linzy was initially informed he was terminated for leaving without notifying his supervisors, yet Defendant's alleged post hoc, "more significant" reason for the termination is the failure to follow the "lock-out, tag-out" procedure, a reasonable juror could accept Linzy's version of the facts and certainly perceive there to be inconsistencies in such

---

Circuit embarked on a more in depth analysis of the regulations encompassing the FMLA in order to revisit the propriety of applying Title VII precedent to the FMLA. The Hunter court began its analysis by citing to the text of the statute and reviewing the regulations prescribed by the Secretary of the Department of Labor. The court noted that among these regulations is as follows:

> The [FMLA]'s prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, *employers cannot use the taking of FMLA leave as a negative factor in employment actions*, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

Id. at 691-92 (quoting 29 C.F.R. § 825.220(c) (emphasis supplied in the Hunter opinion)). The Sixth Circuit concluded that "[t]he phrase 'a negative factor' envisions that the challenged employment decision might also rest on other, permissible factors." Id. at 692. The Court compared this "negative **factor**" language to 42 U.S.C. § 2000e-2(m), which authorizes a claim under Title VII where a protected characteristic such as race or sex is "a motivating **factor**" in an adverse employment decision. Id. (emphasis added). Given this, the Hunter court concluded that "the FMLA, like Title VII, authorizes claims in which an employer bases an employment decision on both permissible and impermissible factors." Id.

explanations asserted by Defendant. See Reeves, 530 U.S. 133, 150, 120 S. Ct. 2097 (noting that an inconsistent reason offered to explain an employee's termination may support a finding that the reason is mere pretext).

Second, as to the "minor" reason set forth for Linzy's termination, a reasonable jury could conclude that Linzy was justified in leaving the plant without notifying management due to the alleged emergent nature of the injury, thus supporting Linzy's position that Defendant's reasoning is unworthy of credence. Moreover, Linzy indeed did inform his supervisors of the situation, via his girlfriend, once he arrived at the hospital. Stan Brewer indicated in his deposition testimony that it was reasonable for Linzy to call once he reached the hospital:

> Q: . . . do you think it was reasonable to call once he got to the hospital and was getting treatment?
>
> A: Yeah. Uh-huh (indicating yes).

Third, as to the "more significant" reason articulated by Defendant, Linzy declares that the he was informed by his two immediate supervisors, Bennie Williams and R.L. Wells, *not* to perform the "lock-out, tag-out" procedure on the "batch blender" while cleaning it. Given this, and taking the facts in the light most favorable to the nonmovant Plaintiff, the Court concludes that material facts exist as to whether Defendant's reason(s) for Plaintiff's termination serve as pretext for proscribed retaliation under the FMLA.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment [38] is DENIED in its entirety.

**So ORDERED on this, the  _10th____ day of __April_____, 2012.**

                                                **/s/   Sharion Aycock_____**
                                                **UNITED STATES DISTRICT JUDGE**